Reset Form

NO. 23-1732

In The

# United States Court of Appeals

For The Fourth Circuit

KOPPERS PERFORMANCE CHEMICALS INC.,
f/k/a OSMOSE WOOD PRESERVING CO. OF
AMERICA, INC. f/k/a OSMOSE WOOD
PRESERVING, INC. f/k/a OSMOSE, INC.

Plaintiff- Appellant

v.

ARGONAUT- MIDWEST INSURANCE COMPANY, d/b/a/ Argo Group

Defendant- Appellee

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA AT CHARLESTON

Opening Brief of Appeal

Plaintiff- Appellant

Laura F. Locklair
Boyle Leonard & Anderson, P.A.
9111 W. College Pointe Blvd.,
Fort Myers, FL 33919
854.800.0804
llocklair@insurance-counsel.com

Counsel for Plaintiff- Appellant

Brandon R. Gottschall
Sweeny, Wingate & Barrow, PA
1515 Lady Street
Columbia, SC 29201
brg@swblaw.com

Defendant - Appellee

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. _____    Caption: _____

Pursuant to FRAP 26.1 and Local Rule 26.1,

_____
(name of party/amicus)


_____

 who is _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.    Is party/amicus a publicly held corporation or other publicly held entity?    YES    NO


2.    Does party/amicus have any parent corporations?    YES    NO
      If yes, identify all parent corporations, including all generations of parent corporations:




3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    YES    NO
      If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?        YES   NO
If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)      YES   NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?        YES   NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.      Is this a criminal case in which there was an organizational victim?      YES   NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: _____      Date: _____

Counsel for: _____

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...........................................................................3

JURISDICTIONAL STATEMENT .............................................................5

STATEMENT OF ISSUES ...........................................................................5

STATEMENT OF CASE ...............................................................................7

SUMMARY OF ARGUMENT .....................................................................12

ARGUMENT ..................................................................................................14

I. The District Court Erred in Limiting the Scope of Coverage for Kopppers Under the Policies .............................................................................................14

    A. Under the plain language of the Policies, Koppers is an insured .............15

    B. If the insured listing in the Policies is ambiguous then it should be construed in favor of Koppers ......................................................................17

    C. The Policies are not limited to Hawaii operations...................................20

        1) At a minimum, the Policies are ambiguous such that coverage cannot be limited to "property and interests of Plaintiff located in Hawaii"...............................................................................................22

        2) It was improper for the District Court to consider extrinsic evidence in concluding that coverage was limited to "property and interests of Plaintiff located in Hawaii".....................................................24

        3) The district court failed to consider Koppers' reasonable expectations as required by Hawaii law.............................................25

II. The District Court Erred in Concluding Argoanut Owed No Duty to Defend ...26

    A. The district court erred in holding that allegations of the complaint excluded the possibility of liability to Koppers arising out of its Hawaii operations.......................................................................................................27

B. The district court erred by concluding that the periods of Argonaut's Policies were not implicated by the claims in the Underlying Lawsuit ........28

    1) The allegations of the Underlying Lawsuit Complaint do not foreclose the potential for bodily injury having occurred within the Argonaut coverage period .................................................................28

    2) The district court failed to recognize Argonaut's duty to investigate the potential for coverage ...................................................................30

    3) Because Argonaut was required to consider extrinsic evidence demonstrating alleged injury in the period of its Policies, the Order is in error ...................................................................................................32

III. The District Court Erred in Holding Argonaut Owed No Duty to Indemnify...36

CONCLUSION ...............................................................................................37

STATEMENT REGARDING ORAL ARGUMENT ............................................37

# TABLE OF AUTHORITIES

**Cases**                                                                                 **Page**

Allstate Ins. Co. v. Hui
57 F.Supp.2d 1039 (D. Haw. 1999) .................................................................. 30, 33

Allstate Ins. Co. v. Riihimaki
No. CIV. 11-00529 ACK, 2012 WL 1983321 (D. Haw. May 30, 2012) .......... …..34

Allstate Ins. Co. v. Scott
No. CIV. 11-00036 ACK, 2012 WL 1136336 (D. Haw. Apr. 3, 2012) ............ ……27

Arc v. DB Ins. Co.
544 F. Supp. 3d 1014 (D. Haw. 2021) ............................................................. …..18

Bayudan v. Tradewind Ins. Co.
87 Hawai'i 379, 957 P.2d 1061 (1998) ........................................................... 30, 33

Burlington Ins. Co. v. Oceanic Design & Const. Inc.
383 F.3d 940 (9th Cir. 2004) ........................................................................... …..14

C. Brewer & Co. v. Marine Indem. Ins. Co. of Am.
135 Haw. 190, 347 P.3d 163 (2015)……….…………………………...19, 22, 23

CIM Ins. Corp. v. Midpac Auto Ctr., Inc.
108 F. Supp. 2d 1092 (D. Haw. 2000) ............................................................. …..35

Dairy Rd. Partners v. Island Ins. Co., Ltd.
92 Hawai'i 398, 992 P.2d 93 (2000)………………………………………15, 24 27

Del Monte Fresh Produce (Hawaii), Inc. v. Fireman's Fund Ins. Co.
117 Haw. 357, 183 P.3d 734 (2007) ................................................................ 17,25

Globe Indem. Co. v. Teixeira
230 F. Supp. 451 (D. Haw. 1964), aff'd, 349 F.2d 502 (9th Cir. 1965) ........... …..16

<u>Great Divide Ins. Co. v. AOAO Maluna Kai Ests.</u>
492 F. Supp. 2d 1216 (D. Haw. 2007)……………………………18, 20, 22, 24, 26

<u>Hawaiian Ins. & Guar. Co. v. Chief Clerk of First Cir. Ct</u>.
68 Haw. 336, 713 P.2d 427 (1986)....................................................................…..19

<u>Ins. Co. of the State of Pennsylvania v. Equitas Ins. Ltd.</u>
68 F.4th 774 (2d Cir. 2023) ...........................................................................…..36

<u>KL Group v. Case, Kay & Lynch</u>
829 F.2d 909 (9th Cir. 1987) ..........................................................................…..20

<u>Ray Comm'cns, Inc. v. Clear Channel Comm'cns</u>
673 F.3d 294 (4th Cir. 2012) ..........................................................................…..14

<u>Sentinel Ins. Co. v. First Ins. Co. of Hawai'i</u>
 76 Haw. 277, 875 P.2d 894 (1994)……………………………… 30, 31, 32, 33, 36

<u>Tri–S Corp. v. W. World Ins. Co.</u>
 110 Hawai'i 473, 135 P.3d 82 (2006)…………………………...14, 15,24, 26, 27

<u>Weight v. USAA Cas. Ins. Co.</u>
782 F. Supp. 2d 1114 (D. Haw. 2011) ............................................................…..26

**Statutes**

28 U.S.C. § 1332(a)(1).................................................................... ……4

28 U.S.C. § 1291 ........................................................................... ……4

4

# JURISDICTIONAL STATEMENT

The District Court had jurisdiction of the case that is docketed as No. 23-1732 pursuant to 28 U.S.C. § 1332(a)(1). There was complete diversity of the defendants before the District Court, including Koppers Performance Chemicals, Inc. f/k/a Osmose Wood Preserving Co. of America, Inc. f/k/a Osmose Wood Preserving, Inc. f/k/a Osmose, Inc. ("Koppers"), a corporation organized and existing under the laws of the State of New York with its principal place of business in the State of Georgia, and Argonaut-Midwest Insurance Company ("Argonaut"), an Illinois Corporation with its principal place of business in Texas, and the matter in controversy exceeded, exclusive of interest and costs, the sum of $75,000.00.

The District Court of Appeals has jurisdiction of this appeal pursuant to 28 U.S.C. § 1291. The final judgment that is being appeal from disposed of all issues in this cause and was entered on June 7, 2023. The Notice of Appeal was filed on July 6, 2023.

# STATEMENT OF ISSUES

Applying Hawaii law, the District Court determined that Argonaut, an insurer, owed no duty to defend or indemnify Koppers, a manufacturer of treated wood, under four policies of commercial general liability insurance Argonaut

issued from June 1, 1979 to December 1, 1982 (the "Policies") with respect to an underlying lawsuit filed in Charleston, South Carolina alleging bodily injury as a result of exposure to treated wood (the "Underlying Lawsuit").

1.     Do the Policies limit coverage for only those operations Koppers undertook as the listed or described DBAs?

2.     Do the Policies limit coverage for bodily injury caused by products manufactured by Koppers only in Hawaii?

3.     Is the limitation of coverage to Koppers consistent with the reasonable expectations doctrine in light of the nationwide products liability coverage afforded by the Policies?

4.     Does the complaint in the Underlying Action eliminate any possibility Koppers could be held liable for bodily injury to the plaintiff in the Underlying Lawsuit ("Riley") caused by wood manufactured in Hawaii?

5.     Does the complaint in the Underlying Lawsuit foreclose the possibility Riley was exposed during the period of Argonaut's Policies from 1979 to 1982?

6.     Did the District Court err in not considering extrinsic information presented to Argonaut that demonstrated the possibility Riley was exposed during the period of the Argonaut Policies?

7.     Did the District Court err in determining that Argonaut owed no duty of indemnification where its breach of its duty to defend waived its coverage defenses?

## STATEMENT OF CASE

Koppers, a manufacturer of treated wood, purchased four policies from Argonaut: policy number CL-371-002087 covering the period June 1, 1979 to December 1, 1980; policy number CL-389-002087 covering the period December 1, 1980 to December 1, 1981; policy number CL-401-002087 covering the period December 1, 1981 to December 1, 1982; and a fourth policy of unknown number and policy period (collectively, the "Policies"). [JA000058-74; JA000271-284, JA000285-301; JA000302; JA000303-320; JA000327-322]. The named insureds on the Policies are "Osmose Wood Preserving, Co. of America, Inc., and Griffin Forrest Industries, Inc., dba Hawaii Wood Preserving Co., and dba Osmose Pacific, Inc., a subsidiary". [JA000271, JA000285, JA000300-301, JA000303].

It is undisputed that Koppers is the successor in interest to Osmose Wood Preserving Co. of America, Inc. [JA00182-183].  At the time of issuance of the Policies, Osmose Wood Preserving Co. of America, Inc. was a Georgia corporation with its principal place of business in Georgia.  [JA00172-181].  At the time of issuance of the Policies, Griffin Forrest Industries, Inc. was a Georgia corporation with its principal place of business in Georgia.  [JA000190]. There is no evidence

in the record that "Osmose Wood Preserving, Co. of America, Inc." was doing business as Hawaii Wood Preserving Co. or Osmose Pacific, Inc. at the time of issuance of the Policies. [JA000136-137].

Koppers was sued in a lawsuit captioned *Phillip H. Riley and Amanda Riley v. Buck Lumber and Building Supply, Inc., et al.*, filed in the District Court of Common Pleas Ninth Judicial Circuit Charleston County, SC Civil Action No. 2014CP107249 (the "Underlying Lawsuit"). [JA000218-235]. The Complaint in the Underlying Lawsuit alleges with respect to injuries purportedly suffered by Phillip H. Riley ("Riley"):

- "Koppers Performance Chemicals, Inc. f/k/a Osmose Wood Preserving Co. of America, Inc., Osmose Wood Preserving, inc. and Osmose, Inc. ("Koppers") are foreign corporations doing business in Charleston, South Carolina. Koppers manufactured the wood treatment chemicals at issue in this lawsuit." ¶ 10;
- "Mr. Riley is a 35-year-old man who grew up, lives, and works in Charleston." ¶ 22;
- "Defendants manufactured the treated lumber with arsenic and other substances to which Mr. Riley was exposed, and with which Mr. Riley worked." ¶ 42; and
- "The arsenic and other substances in the products manufactured by Defendants caused Mr. Riley's injuries." ¶ 46.

Koppers tendered its defense in the Underlying Lawsuit to Argonaut on December 23, 2016. [JA000333]   In connection with its tender of the claim, Koppers promptly responded to all of Argonaut's requests for information with respect to the Claim and there was no material requested by Argonaut which Koppers did not timely provide. [JA000138].   Among other things, Argonaut

8

requested information regarding the dates that Mr. Riley claims he was exposed. [JA00337] ("Please advise if a date of first alleged exposure has been identified and/or narrowed down pursuant to discovery over the past two years").   On February 3, 2017, Koppers informed Argonaut that Plaintiff testified in his deposition in the Underlying Lawsuit that he was exposed to the wood treatment chemicals at issue in the lawsuit from his birth in 1978 throughout 1992 – clearly a timeframe that included the period of the Policies from June 1, 1979 through December 1, 1982.    [JA00056-58, JA000169, JA000449-450].  Specifically, Koppers provided deposition testimony to Argonaut reflecting that Plaintiff claimed that he was exposed to the allegedly toxic chemicals "from '78 to '92, you know, when I was --- from the time of being born until we stopped working with it in 1992, that's the timeframe that I'm talking about."  Id.

Argonaut acknowledged that the provided deposition testimony from Plaintiff provided by Koppers as part of its request for coverage created an inconsistency as to whether he was exposed during the period of the Policies. [JA000168-169].   On June 22, 2017, Argonaut disclaimed its duty to defend Koppers.  [JA000075-78]. However, that Argonaut did not contest exposure during the period of its Policies is reflected in the fact that it did not deny coverage on that basis.  Id.

On August 31, 2017, an Amended Complaint was filed in the Underlying Lawsuit which alleges:

- "Koppers Performance Chemicals, Inc. f/k/a Osmose Wood Preserving Co. of America, Inc., Osmose Wood Preserving, inc. and Osmose, Inc. ("Koppers") are foreign corporations doing business in Charleston, South Carolina.  Koppers manufactured the wood treatment chemicals at issue in this lawsuit." ¶ 11;
- "Mr. Riley was a 38-year-old man who grew up, lives, and works in Charleston." ¶ 23;
- "Mr. Riley grew up on his family's property, where his family's fence-building business was located.  For years, many thoughts of fee of CCA-treated wood were kept, cut, burned, and used on the property." ¶ 24;
- "For years, Mr. Riley also worked in the fence-making industry using treated lumber manufactured and/or provided by Defendants." ¶ 25;
- "Defendants manufactured the treated lumber with arsenic and other substances to which Mr. Riley was exposed, and with which Mr. Riley worked." ¶ 42; and
- "The arsenic and other substances in the products manufactured by Defendants caused Mr. Riley's injuries." ¶ 52.

[JA000034-55].   Neither the Complaint nor the Amended Complaint in the Underlying Lawsuit specify where the product manufactured by Koppers that allegedly caused and/or contributed to Riley's injuries originated, but neither pleading excludes the possibility that the product originated in Hawaii.   Id. [JA000135, JA000156].

Due to Argonaut's failure to defend or indemnify Koppers in the Underlying Action, Koppers paid for its own defense fees and costs in the Underlying Action and paid out of its own funds to settle the claims against itself in the Underlying Action. [JA000031]. On May 27, 2020 Koppers filed a complaint against Argonaut

in the District Court of South Carolina seeking to recover the fees and costs it paid in its own defense and the amounts it paid out of pocket to resolve the claims in the Underlying Action.  [JA000021-33].

Argonaut filed an Answer and Counterclaim on July 23, 2020 [JA000079-93], to which Koppers answered on August 20, 2020 [JA000094-101].  On August 31, 2020, Argonaut filed an Amended Answer and Counterclaim seeking its own declarations regarding the Policies [JA000102-117].  Koppers answered the Amended Answer and Counterclaim on September 16, 2020 [JA000118-125] and moved to dismiss the Amended Counterclaim on June 21, 2021, which motion was denied.

On January 3, 2022, Koppers moved for partial summary judgment against Argonaut.  [JA000126-129]. On the same date, Argonaut moved for summary judgment against Koppers.  [JA000236-270].  Koppers and Argonaut filed their respective responses in opposition [JA000342-369, JA000370-406].  Koppers and Argonaut each filed a reply.  [JA000407-420, JA000421-436].  In an Order and Opinion dated April 18, 2022 (the "Order"), the District Court granted Argonaut's motion for summary judgment and denied Koppers' motion for partial summary judgment.  [JA000437-452]

# SUMMARY OF ARGUMENT

Koppers, then known as Osmose Wood Preserving Co. of America, Inc., purchased the Policies from Argonaut to provide, among other things, nationwide products liability coverage. Osmose Wood Preserving Co. of America, Inc. was named on the Policies in a list of named insured entities that included DBA entities. Under the plain language of the Policies, Koppers was afforded full coverage as an independent named insured, separate and apart from the DBAs, not, as the District Court erroneously concluded, only coverage limited to that provided to the listed DBAs. Further, the Policies on their face promised to provide coverage for products liability incurred anywhere in the United States, per the territorial definition in the Policies, not to liability incurred only in Hawaii or liability having some connection with Koppers' premises or operations in Hawaii, as the District Court erroneously concluded.

To the extent there was any ambiguity regarding the insured listing or the territorial scope of the products liability coverage, the District Court should have read such ambiguity in favor of coverage and consistent with Koppers' objectively reasonable expectation that it would be covered for a products liability lawsuit filed in South Carolina.

The District Court also erred in determining that the Underlying Lawsuit could not possibly have involved wood originating in Hawaii, and therefore

12

Argonaut had no duty to defend Koppers. Even if the Policies limited coverage to liability for products manufactured in Hawaii, the allegations in the Underlying Lawsuit complaint made no mention of where the wood came from, so there was no way to eliminate the possibility the wood came from Hawaii. Further, the District Court's determination that the underlying plaintiff could not possibly have been exposed during the coverage period of the Policies is not supported by the underlying allegations or by the underlying plaintiff's own deposition testimony, which Argonaut and the District Court both wrongfully refused to consider.

Because the Policies cover Koppers for products liability claims in South Carolina, and because the underlying allegations within and outside the underlying Complaint raised at least the possibility of exposure during Argonaut's coverage period, the District Court should have held that Argonaut breached its duty to defend Koppers. Further, because an insurer breaches its duty to defend at its own peril and loses its indemnity coverage defenses as a penalty for that breach, the District Court should have held Argonaut in breach of its duty to indemnify Koppers for the settlement in the Underlying Lawsuit.

Koppers respectfully requests that this Court reverse the District Court's Order granting summary judgment to Argonaut on the duty to defend and indemnify, and instruct the District Court to enter judgment in favor of Koppers on the duty to defend and indemnify.

13

# ARGUMENT

This Court reviews summary judgment orders de novo. <u>See</u>, <u>e.g.</u>, <u>Ray Comm'cns, Inc. v. Clear Channel Comm'cns</u>, 673 F.3d 294, 299 (4th Cir. 2012).

## I. The District Court Erred in Limiting the Scope of Coverage for Koppers Under the Policies.

Under Hawaii law,[1] courts look to the plain language of an insurance policy to determine the scope of an insurer's duties. <u>Burlington Ins. Co. v. Oceanic Design & Const. Inc</u>, 383 F.3d 940, 945 (9th Cir. 2004) ("In Hawaii, the terms of an insurance policy are to be interpreted according to their plain, ordinary, and accepted sense in common speech.")." [JA000443-444]. The District Court's determination that Koppers is not entitled to coverage for its products liability anywhere in the United States is contrary to the plain language of the Policies.

Alternatively, if the insurance policy language is ambiguous, Hawaii's principle of *contra proferentem* requires such ambiguities to be read against the insurer and in accordance with the policyholder's reasonable expectations doctrine, to find in favor of coverage. <u>Tri–S Corp. v. W. World Ins. Co.</u>, 110 Hawai'i 473, 489, 135 P.3d 82, 98 (2006) ("[B]ecause insurance policies are contracts of adhesion and are premised on standard forms prepared by the insurer's attorneys, we have long subscribed to the principle that they must be construed liberally in

---

[1] The District Court determined that Hawaii law applies to this dispute. Koppers does not challenge that determination.

14

favor of the insured and any ambiguities must be resolved against the insurer. Put another way, the rule is that policies are to be construed in accord with the reasonable expectations of a layperson") (quoting <u>Dairy Rd. Partners v. Island Ins. Co., Ltd.</u>, 92 Hawai'i 398, 411–12, 992 P.2d 93, 106–07 (2000) (internal citations, quotation marks, brackets, and ellipses omitted)). [JA000444].

The District Court erred by misreading the plain terms of the listing of insureds in the Policies' declarations page, which identifies Koppers as an unqualified insured.  The District Court also erred by ignoring the plain terms of the Policies' territorial clause, which obligated Argonaut to cover products liability claims occurring anywhere in the United States.

To the extent there is ambiguity in the policy language, the District Court failed to construe such ambiguity against the insurer and in accord with the reasonable expectations of its policyholder.   Such errors resulted in findings contrary to Hawaii law, including conclusions in the Order that (1) Koppers was not an independent insured on the Policies, and (2) the Policies were limited to Hawaii operations of certain Hawaii DBAs.

### A. Under the plain language of the Policies, Koppers is an insured.

The Order provides that the "Policies are limited to ensuring entities and operations located in Hawaii."  [JA000444].  By determining that Koppers f/k/a Osmose Wood Preserving Company of America, Inc. was an insured only to the

extent of operations of Hawaii Wood Preserving Co. and Osmose Pacific, Inc., the District Court reached conclusions inconsistent with the plain policy language and Hawaii law.

It is undisputed that "Osmose Wood Preserving Co. of America, Inc." is Koppers's former name.  [JA00182-183].  It is also undisputed that Osmose Wood Preserving Co. of America, Inc. is listed as a named insured on the Policies. [JA00271, JA000285, JA000300-301 JA000303]. Osmose Wood Preserving Co. of America, Inc. is listed on the declarations page as a stand-alone insured – separated by words ("and") and punctuation (a comma) from other insureds listed in the declarations.  Id. The DBA entities also listed on the declarations page, "Hawaii Wood Preserving Co." and "Osmose Pacific, Inc.", are not fictious trade names associated with Osmose Wood Preserving Co. of America, Inc. but are separate entities. [JA000136-137, JA000412] (reflecting that neither Hawaii Wood nor Osmose Pacific was listed as a trade name for Osmose Wood Preserving Co. of America, Inc.).

The Order's interpretation of the insured listing on the declarations page to limit coverage afforded to Osmose Wood Preserving Co. of America, Inc. as modified by the subsequent DBA listings fails to honor the word "and" and give effect to the commas. Globe Indem. Co. v. Teixeira, 230 F. Supp. 451, 455 (D. Haw. 1964), aff'd, 349 F.2d 502 (9th Cir. 1965) (noting the obligation "to give to

16

every word in the contract [of insurance] a reasonable meaning and effect."); <u>Del Monte Fresh Produce (Hawaii), Inc. v. Fireman's Fund Ins. Co.,</u> 117 Haw. 357, 368, 183 P.3d 734, 745 (2007) (recognizing that a policy must be construed "according to the entirety of its terms"). From Koppers's perspective, if the DBAs are read to modify coverage, they would do so only for the preceding entity, "Griffin Forest Industries, Inc."

The Policies contain no limiting language indicting that the DBAs define the scope of coverage under the Policies. In other words, the Policies do not say "you are an insured, *but only for activities that you undertake as the listed or described DBA"* or similar restrictive wording.  Neither the plain language, nor the punctuation in the insured listing, nor the unrestricted grant of coverage (which fails to expressly limit liability for Koppers to the operations of the DBAs) support the District Court's interpretation. A plain reading of the Policies' language demonstrates that Koppers is entitled to coverage as an independent insured enjoying full rights under the Policies, and therefore the District Court erred in limiting coverage to Hawaii operations of DBA entities also listed on the Policies.

### B. If the insured listing in the Policies is ambiguous then it should be construed in favor of Koppers.

Even if this Court is not inclined to reverse the Order on the grounds that Koppers is, based on the clear and plain language of the Policies, a named insured in its own right, the Order itself highlights the existence of ambiguity that requires

a finding of coverage in favor of Koppers. [JA000444] Specifically, the Order notes that "Argo argues that…the DBA language…is a limiting term restricting coverage to Hawaii Wood Preserving Co. and Osmose Pacific, Inc." and that Koppers "argues that the DBA listed in the…Policies…refer only to Griffin Forest Industries, Inc." [JA000444]  The District Court recognized Koppers' argument that "Osmose Wood Preserving Co. of America, Inc." is a stand-alone entity entitled to coverage as a named insured and, among other things, the commas and the use of "and" reflect that the right of "Osmose Wood Preserving Co. of America, Inc." to insurance is not modified or limited by the DBAs.  The District Court also acknowledged Koppers' secondary argument that if the DBAs are read to modify coverage, the same would only apply based on the text of the declarations to coverage afforded to "Griffin Forest Industries, Inc."  The District Court did not find Koppers' interpretations unreasonable.  To the contrary, the District Court recognized the validity of Koppers' position.  [JA000444].  Yet, the District Court did not apply the doctrine of *contra proferentem* based on this ambiguity as it should have.

Hawaii law is stalwart in its application of the rule of *contra proferentem*. See, e.g., Arc v. DB Ins. Co., 544 F. Supp. 3d 1014 (D. Haw. 2021), aff'd, 2022 WL 16847548 (9th Cir. Nov. 10, 2022); Great Divide Ins. Co. v. AOAO Maluna Kai Ests., 492 F. Supp. 2d 1216, 1226 (D. Haw. 2007). Hawaii law recognizes that

if an insurer fails in its duty of clarity, the policy must be construed against the insurer and in favor of coverage. Hawaiian Ins. & Guar. Co. v. Chief Clerk of First Cir. Ct., 68 Haw. 336, 341, 713 P.2d 427, 431 (1986) (recognizing that "insurance policies are contracts of adhesion ... premised on standard forms prepared by the insurer's attorneys" who have the obligation to write clear policy language).

The District Court's recognition of multiple reasonable interpretations of the declarations page demonstrates the existence of ambiguity. See C. Brewer & Co. v. Marine Indem. Ins. Co. of Am., 135 Haw. 190, 196, 347 P.3d 163, 169 (2015) ("We have held that [a] contract is ambiguous when its terms are reasonably susceptible to more than one meaning.") (internal citations omitted). When the District Court recognized, as it clearly did [JA000444-445], that the declaration page's identification of the named insureds could be interpreted in more than one way, the District Court was required to "construe[ the Policies] liberally in favor of [Koppers] and the ambiguities resolved against [Argonaut]." Chief Clerk, 68 Haw. at 341, 713 P.2d at 431; Great Divide, 492 F. Supp. 2d at 1227 ("If the policy is reasonably subject to differing interpretation, the ambiguity must be resolved against the insurer."). The District Court failed to do so.

The District Court should have, at a minimum, found that the insured listing on the Policies was ambiguous. However, the District Court's analysis erred in its approach, which resulted in an incorrect conclusion. The District Court never even

addressed the question of whether the insured listing was ambiguous, because the District Court erroneously resorted to extrinsic evidence outside the four corners of the Policies to support its view that the Policies were clear on their face. [JA000444-446] (referencing deposition testimony).  This was error, as Hawaii law expressly rejects an insurer's use of extrinsic evidence to attempt to explain its unclear policy language. See, e.g., KL Group v. Case, Kay & Lynch, 829 F.2d 909, 916 (9th Cir. 1987) (limiting district court to the four corners of the policy to determine whether an ambiguity exists); Great Divide, 492 F. Supp. 2d at 1226 (rejecting the use of extrinsic evidence in to resolve ambiguities in a policy).

When the District Court identified ambiguity in the declaration page's naming of the insureds, it should have construed that ambiguity in favor of Koppers rather than look to extrinsic evidence to construe the language in favor of Argonaut.

### C. The Policies are not limited to Hawaii operations.

Reversal is also warranted because the District Court erroneously concluded that "the Argo Policies ensure only property and interests of Plaintiff located within Hawaii." [JA000444].  As with the insured entities, the Order's restriction of coverage is inconsistent with the terms of the Policies drafted by Argonaut.

The Policies state that they apply "to bodily injury or property damage which occurs within the policy territory." [JA000155, JA000274].  The District

20

Court ignores that the Policies define the coverage territory as "the United States of America, its territories or possessions, or Canada." [JA000155, JA00328, JA000331]. The territorial clause in the Policies is incompatible with the District Court's determination that the Policies are limited to liability arising out of Hawaii operations.

In order to reach its conclusion, the District Court ignores the Policies' express statement that they cover claims occurring anywhere in the United States [JA000155, JA000274, JA00328, JA000331] and instead attempts to read into the commercial general liability part a geographical and/or coverage limitation that does not exist. The Order focuses on the hazards schedule and fixates on the reference to a Hawaii address next to a "premises – operations" designation. [JA000286, JA000297 JA000304, JA000317]. The existence of coverage for premises liability for operations in Hawaii cannot function to reduce coverage for products liability claims occurring outside Hawaii.

The premises/operations coverage is not at issue in the Underlying Lawsuit, a products liability case concerning a wood preserving product. [JA000034-56, JA000218-235]. The hazards schedule reflects "products-completed operations" without reference to a particular location in Hawaii. [JA000286, JA000297 JA000304, JA000317]. Moreover, the products coverage refers to "wood preserving" products. Id. There is nothing in the Policies that state that the

nationwide products liability coverage only applies to product manufactured in Hawaii or otherwise having a connection with Hawaii operations.  [JA000156-157]

The District Court's use of a specified premises location to restrict the entirety of coverage under the commercial general liability part, including the products liability coverage, when the policy expressly applies to "bodily injury or property damage which occurs within the policy territory [of "the United States of America, its territories or possessions, or Canada"]" is inconsistent with Hawaii law requiring courts to interpret an insurance policy "according to the entirety of its terms and conditions."  Great Divide., 492 F. Supp. 2d at 1226.

> **1) At a minimum, the Policies are ambiguous such that coverage cannot be limited to "property and interests of Plaintiff located in Hawaii".**

Even if the territorial clause does not clearly extend coverage under the Policies to product liability claims occurring anywhere in the United States, the policy is at least ambiguous as to its territorial limitation.  As stated above, the Hawaii addresses stated in the "hazards" or "premises" listings in the Policies do not clearly restrict coverage for products liability claims.  To the extent there is a conflict in the policy language between the territorial clause and the premises scheduled in the Policies, this would only create an ambiguity that should be read in Koppers' favor.  See, e.g., C. Brewer, 135 Haw. at 196, 347 P.3d at 169 ("We

have held that [a] contract is ambiguous when its terms are reasonably susceptible to more than one meaning.") (internal citations omitted).

The District Court's reading of the locations/hazards listing to limit the Argonaut coverage to claims occurring in or having a connection with Hawaii is in conflict with the Hawaii Supreme District Court's decision in C. Brewer, which held that a policy's designated premises endorsement was ambiguous when read in light of the nationwide coverage territory. 135 Haw. At 199, 347 P.3d at172. The C. Brewer court held that "language in a designated premises endorsement 'must be clear and unequivocal[ ]' to convert a CGL policy to a premises liability policy that limits coverage to injuries occurring on specific premises." Id. at 166.

Here, the Policies do not contain a designated premises endorsement nor do the Policies clearly and unequivocally limit the coverage to Hawaii operations. In fact, the Order makes no reference to the Hawaii Supreme District Court's "clear and unequivocal" standard. Not only do the Policies lack "clear and unequivocal" language limiting coverage to Hawaii operations of the listed insureds, the nationwide products coverage points squarely in the opposite direction. Regardless, the ambiguity created by the policy language justifies not only reversal of the Order but a finding in favor of Koppers as to Argonaut's duty to defend.

**2) It was improper for the District Court to consider extrinsic evidence in concluding that coverage was limited to "property and interests of Plaintiff located in Hawaii"**

The District Court again erred in relying on extrinsic evidence to limit coverage to Koppers in face of ambiguity in the Policies, this time as to the geographical limitations of products liability coverage. Specifically, it was improper for the District Court to consider extrinsic evidence in the form of deposition testimony, as well as the certificate of insurance "describing 'operations/locations/vehicles' as "Waiau Garden Villa, Phase VI, Pearly City, Oahu, Hawaii" as part of its evaluation of the scope of coverage of the Policies. [JA000445].

The District Court should not have considered extrinsic evidence to attempt to resolve ambiguity in the Policies as to whether coverage is extended to products liability beyond Koppers' operations in Hawaii. See Great Divide, 492 F. Supp. 2d at 1227, n.9 (rejecting the insurer's attempts to introduce extrinsic evidence to explain an ambiguity in the policy, and refusing to adopt Washington State law on the subject, given clear Hawaii Supreme District Court precedent, including Tri-S Corp. and Dairy Rd. Partners). Thus, the District Court's reliance on a certificate

of insurance and deposition testimony offered by Argonaut[2] as to Argonaut's alleged intent with respect to the Policy's territorial scope was in error.

### 3) The District Court failed to consider Koppers' reasonable expectations as required by Hawaii law.

While the Order recognizes the reasonable expectations doctrine applies under Hawaii law [JA000444], the District Court never applied the doctrine. If the District Court applied the reasonable expectations doctrine it should have concluded that it was objectively reasonable for Koppers to expect that, because the Policies provide products coverage on a nationwide basis, Koppers would be insured for a products liability claim occurring in South Carolina. See Del Monte, 117 Haw. at 368, 183 P.3d at 745. As the District Court stated in Del Monte, "[t]he objectively reasonable expectations of [policyholders] and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations." Id. (citations omitted). In other words, even if the District Court was correct to interpret the hazards/location schedule in a highly technical manner to modify the

_____

[2] Even if the testimony cited by the District Court was relevant and/or permissible, the testimony supports Koppers's interpretation of the products coverage in the Policies. [JA000136-137] ("testifying the Argo Policies provide products coverage outside of Hawaii because 'typically, you are relinquishing control of your product'"). Argonaut acknowledged its products coverage was meant to apply nationwide, consistent with the territory definition in the Policies. [JA000155, JA000274, JA00328, JA000331].

territorial definition in the Policies, this still could not defeat Koppers's objectively reasonable belief that the plain language of the territorial definition meant the Policies provided national products liability coverage. Hawaii law precludes the District Court from ignoring this reasonable expectation and using an ambiguous and technical policy schedule to eliminate coverage that is clearly provided elsewhere in the Policies.

## II. The District Court Erred in Concluding Argonaut Owed No Duty to Defend.

While the District Court acknowledged that an insurer's duty to defend "arises whenever there is the mere *potential* for coverage" the District Court failed to properly apply Hawaii's "impossibility" standard when evaluating Argonaut's duty to defend. [JA000446-447]. Argonaut was "required to prove that it would be <u>impossible</u> for [plaintiff in the underlying lawsuit] to prevail against [the insured] in the underlying lawsuit on a claim covered by the policies" in order to avoid its defense obligation." <u>Great Divide Ins. Co.</u>, 371 F. Supp. 3d at 818–19 (emphasis added); <u>Weight v. USAA Cas. Ins. Co</u>., 782 F. Supp. 2d 1114, 1122 (D. Haw. 2011) (holding that the insurer has the burden of proving that it would be "impossible for any party in the underlying lawsuit to prevail against [the insured] on a claim covered by the policy"); <u>Tri-S Corp.</u>, 110 Haw. at 488, 135 P.3d at 97 (recognizing that "the duty to defend rests primarily on the possibility that

coverage exists. This possibility may be remote but if it exists, the insurer owes the insured a defense").

An insurer has a high burden to disprove its duty to defend under Hawaii law. Allstate Ins. Co. v. Scott, No. CIV. 11-00036 ACK, 2012 WL 1136336, at *3 (D. Haw. Apr. 3, 2012) ("'[W]here the complaint in the underlying lawsuit alleges facts within coverage,' an insurer that wishes to avoid providing a defense has a high burden.") (citing Dairy Rd. Partners, 92 Haw. at 422, 992 P.2d at 117). "All doubts as to whether a duty to defend exists are resolved against the insurer and in favor of the insured." Tri-S Corp., 110 Haw. At 488, 135 P.3d at 97.

## A. The District Court erred in holding that allegations of the complaint excluded the possibility of liability to Koppers arising out of its Hawaii operations.

As argued in Section I, the District Court erred in its evaluation of the scope of coverage under the Policies. However, even if the Policies had clearly and unequivocally limited coverage to product liability claims arising from Koppers's Hawaii operations, Argonaut did not and could not prove that it was impossible that the treated wood at issue in the Underlying Lawsuit came from Hawaii.

The Complaint in the Underlying Lawsuit did not specify where the allegedly defective wood came from, so it is possible the wood came from Hawaii. [JA000034-55, JA000168-169, JA000218-235]. The District Court's reliance on the fact that the original Complaint did not "describe [Kopper's] Hawaii

27

operations" misapplies the burden of proof as to the duty to defend under Hawaii law. [JA000447]. Koppers was not required to prove that the plaintiff alleged the wood came from Hawaii or had a connection with Hawaii operations. It was Argonaut's burden to prove it was impossible the wood which allegedly injured the plaintiff could have come from Hawaii. Argonaut made no attempt to carry this burden, and there is no evidence in the record to support this conclusion.

Because the District Court misapplied Hawaii's impossibility standard on duty to defend, and failed to resolve doubts as to whether a duty to defend exists against Argonaut and in favor of Koppers, the Order should be reversed.

**B. The District Court erred by concluding that the periods of Argonaut's Policies were not implicated by the claims in the Underlying Action.**

The Order also erroneously held that Argonaut did not owe a duty to defend Koppers because "the Original Complaint does not allege bodily injury during the applicable policy periods." [JA000449]. This conclusion is inconsistent with Hawaii's "impossibility" standard, and also fails to recognize Argonaut's duty to investigate the potential for coverage under Hawaii law.

**1) The allegations of the Underlying Lawsuit Complaint do not foreclose the potential for bodily injury having occurred within the Argonaut coverage period.**

The District Court erroneously determined that the underlying plaintiff could not have been exposed during the period of Argonaut's coverage because Riley

28

alleged he was working in the fence-making industry at the time of exposure. [JA000449]. However, the allegations in the Complaint do not foreclose the possibility Riley was exposed as a child, which puts his exposure in the Argonaut policy period. For example, paragraph 42 of the original underlying complaint states Riley was exposed to the wood <u>and</u> worked with the wood. [JA000225]. The use of the word "and" in this allegation suggests that Riley alleged damage both when working with the wood and when exposed to the wood. Similarly, paragraph 22 of the complaint states that Riley was 35 at the time of filing in 2014, such that Riley could have been exposed as early as 1979, the first year of the Argonaut's policy period. [JA000222].

We know, based on Riley's later testimony discussed below, that Riley did allege he was exposed to the wood as a child while playing in the backyard of his home, where his parents conducted their fence-making business. [000056-58] This is not Monday morning quarterbacking: it merely confirms that the allegations of the complaint did not make it impossible that Riley alleged exposure as a child when Argonaut provided coverage.

Because the allegations of the underlying complaint did not foreclose the potential for injury to Riley to have occurred within the period of the Policies, the District Court's conclusion that the duty to defend was not triggered was contrary to Hawaii's impossibility standard and was in error.

29

## 2) The District Court failed to recognize Argonaut's duty to investigate the potential for coverage

Beyond failing to correctly apply the "impossibility" standard, the Order neglects to recognize Hawaii law requiring an insurer to investigate the potential for coverage where allegations of a complaint create ambiguity by virtue of their silence or lack of completeness. Allstate Ins. Co. v. Hui, 57 F.Supp.2d 1039, 1043 (D. Haw. 1999) (quoting Bayudan v. Tradewind Ins. Co., 87 Hawai'i 379, 380, 957 P.2d 1061 (1998)) (recognizing that an insurer must investigate where the allegations of the complaint are ambiguous). Indeed, the key decision the district court neglects to mention is Sentinel Ins. Co. v. First Ins. Co. of Hawai'i, 76 Haw. 277, 288, 875 P.2d 894, 905 (1994), as amended on reconsideration (June 24, 1994), which provides:

> Where the complaint does not address the crucial issue of whether the alleged property damage "occur[red] during the policy period," "[a]n insurer must look beyond the effect of the pleadings and must consider any facts brought to its attention or any facts which it could reasonably discover in determining whether it has a duty to defend.... The possibility of coverage must be determined by a good faith analysis of all information known to the insured or all information reasonably ascertainable by inquiry and investigation."

(citing Standard Oil, 65 Haw. at 527, 654 P.2d at 1349).

The District Court wrongly placed the burden on Koppers to feed Argonaut with information to trigger the duty to defend. Specifically, the District Court faulted Koppers for failing to provide Argonaut with a copy of the Amended

30

Complaint, after Argonaut had disclaimed coverage obligations. [JA000450-451].[3]
Under Hawaii law, Koppers had no obligation to continue to keep Argonaut
apprised of developments in the underlying action, and to notify Argonaut of
amended pleadings, since Argonaut breached its defense obligation "at its own
peril". <u>Sentinel Ins. Co.</u>, 76 Haw. at 296, 875 P.2d at 913.

As discussed below, Koppers <u>did</u> provide information to Argonaut showing
that Argonaut's duty to defend was triggered, which information Argonaut
ignored. [JA000449]; (acknowledging that "the fact that [Koppers] submitted to
Argo an excerpt from Riley's deposition along with the Original Complaint does
not change the above conclusion."); [JA000450] (finding Argonaut owed no duty
to defend based "upon submission of the Original Complaint and the Riley
deposition excerpt."). But Hawaii law places the burden on the insurer to actively
investigate a claim to determine whether facts exist outside the underlying
complaint that would trigger the duty to defend. As reflected in the <u>Sentinel</u> case,

[3] The District Court later held that allegations of the Amended Complaint did
trigger a duty to defend going back to the period prior to and during that of
Argonaut's coverage. [JA000460]. The District Court also held that the
deposition transcript provided to Argonaut and the allegations of the Complaint
were sufficient to trigger the duty to defend of Travelers, which was on the risk for
the year *before* Argonaut's Policies first incepted. <u>Id</u>. The District Court's Order
as to Argonaut [JA000437-452] is inconsistent with its Order as to Travelers
[JA000453-469]: it cannot be that the same evidence of timing of exposure which
triggered Travelers' duty to defend, whose policies predated Argonaut's, would not
be sufficient to also trigger that of Argonaut.

Argonaut was required to conduct an independent investigation as to its duty to defend – not merely rely on information provided by Koppers. Any cursory investigation would have revealed that Plaintiff's parents ran the fence building business from their home and that Plaintiff therefore could have been exposed as a child growing up in that home. Accordingly, the District Court erred when it faulted Koppers for failing to provide the amended complaint to Argonaut since Hawaii law obligated Argonaut to independently investigate and monitor the developments in the Underlying Action.

Because the Order did not consider the <u>Sentinel</u> case, it improperly absolved Argonaut of Argonaut's obligation to conduct a claims investigation, and therefore wrongly held that Argonaut owed no duty to defend where an investigation would have revealed the possibility that Riley was exposed as a child.

### 3) Because Argonaut was required to consider extrinsic evidence demonstrating alleged injury in the period of its Policies, the Order is in error.

Whereas the District Court improperly referenced information outside the four corners of the Policies in an attempt to resolve ambiguity in the Policies, the District Court also improperly refused to consider information provided to Argonaut outside the four corners of the underlying complaint in considering the duty to defend.

Had the District Court properly applied the <u>Sentinel</u> case, it should have required Argonaut to defend Koppers because the insurer was in possession of extrinsic evidence reflecting that Riley testified he was injured by exposure from his birth in 1978, which put the period of alleged exposure within the period of Argonaut's Policies of 1979 to 1982. <u>Hui</u>, 57 F.Supp.2d at 1043 (quoting <u>Bayudan</u>, 87 Hawaiʻi at 380, (recognizing insurer's obligation to consider its duty to defend when "(1) the allegations in the pleadings should alert the insurer that there is a potential for coverage ...; (2) the allegations differ from facts the insurer knows or can readily determine; or (3) the allegations are ambiguous.").

Koppers provided Argonaut with portions of Riley's deposition testimony on February 3, 2017. [JA000169; JA000449-450]. In this testimony, Riley testified that he was exposed to Koppers' treated wood from his birth in 1978 throughout 1992 – clearly a timeframe that included the period of the Policies from June 1, 1979 through December 1, 1982. [JA000058]. Specifically, Koppers provided deposition testimony to Argonaut reflecting that Riley claimed that he was exposed to the allegedly toxic chemicals "from '78 to '92, you know, when I was --- from the time of being born until we stopped working with it in 1992, that's the timeframe that I'm talking about." [JA000058]. Despite being provided this deposition testimony showing that Riley was exposed during the period of Argonaut's Policies, Argonaut nonetheless refused to defend Koppers. [JA000075-

58, JA000449-450]. However, its denial did not contend that Plaintiff was not potentially exposed during the period of its Policies. Id.

The District Court erred in refusing to consider the information provided by Koppers to Argonaut showing that Riley alleged exposure during the period of Argonaut's Policies during his deposition. In doing so, the District Court misapplied the decision in Allstate Ins. Co. v. Riihimaki, No. CIV. 11-00529 ACK, 2012 WL 1983321 (D. Haw. May 30, 2012) in holding that it was not necessary to consider the extrinsic evidence outside the allegations of the complaint. Here, unlike the situation in Riihimaki, Riley's deposition testimony presented to Argonaut specifically provided a period of exposure that was either (a) contrary to the period of exposure stated in the complaint (if the District Court's interpretation is correct), or (b) filled in a period of exposure not contained in the complaint (if it is determined the complaint allegations were inadequate as to the alleged period of exposure). The District Court in another order in this matter acknowledged that the deposition testimony it concluded as a matter of fact was provided to Argonaut "was contradictory [to the allegations of the Complaint] as to when [Plaintiff] was exposed to CCA." [JA000460]. The District Court held that Travelers, whose policies predated the Policies of Argonaut, owed a duty to defend in light of such contradiction, and it erred in not reaching the same result for Argonaut who, the

34

District Court determined, was provided with the same information. [JA000449-450, JA000460].

Either way, whether Riley's deposition testimony conflicted with the complaint allegations as to his period of exposure, or merely filled in details as to the exposure period not clearly set forth in the complaint, Argonaut had an obligation to consider the deposition testimony in determining whether it had a duty to defend. CIM Ins. Corp. v. Midpac Auto Ctr., Inc., 108 F. Supp. 2d 1092, 1099 (D. Haw. 2000) ("Thus, an insurance company has an obligation to investigate to determine whether a third party's action raises a potential for coverage and thus implicates its duty to defend when '(1) the allegations in the pleadings should alert the insurer that there is a potential for coverage ...; (2) the allegations differ from facts the insurer knows or can readily determine; or (3) the allegations are ambiguous.'") (citation omitted). The District Court even acknowledged this contradiction. [JA000460].

Had the District Court considered Riley's deposition testimony, which it was required to do under Hawaii law, the District Court should have determined that the period of exposure was not only possibility within the period of Argonaut's Policies, but squarely within that period. Therefore, the District Court erred in determining that Argonaut had no duty to defend because Riley alleged he was exposed only after Argonaut's Policies had expired.

III.   **The District Court Erred in Holding Argonaut Owed No Duty to Indemnify Koppers.**

Argonaut's breach of its duty to defend also required that the District Court deny Argonaut's motion for summary judgment as to Argonaut's duty to indemnify, and its failure to do so was error.  See Sentinel 76 Haw. at 297 (holding that an insurer's breach of its duty to defend waives its coverage defenses and creates a presumption of indemnity coverage).  Accordingly, if Argonaut owed Koppers a duty to defend, as Koppers submits, then the District Court should have found that indemnity coverage is presumed.  Argonaut presented no evidence to rebut this presumption, and therefore its breach of its duty to defend means Argonaut is also obligated to indemnify Koppers as a matter of law.

Hawaii law provides that any insurer on the risk is obligated to fully indemnify a loss, regardless of whether the loss occurred over a period of years when the insurer did not provide coverage.  See Sentinel, 76 Haw. at 297, 875 P.2d at 917.  In other words, Hawaii applies "all sums" allocation.  See Ins. Co. of the State of Pennsylvania v. Equitas Ins. Ltd., 68 F.4th 774, 778 (2d Cir. 2023) (applying Hawaii's "all sums" rule).

Therefore, because the District Court erred in holding that Argonaut had no duty to indemnify Koppers, based on the District Court's erroneous determination that Argonaut had no duty to defend, this Court should reverse not only on the duty to defend determination but on the duty to indemnify determination as well.

36

# CONCLUSION

Based on the errors of law discussed herein, Koppers respectfully requests that this Court reverse the District Court's Order granting summary judgment to Argonaut on the duty to defend and indemnify, and instruct the District Court to enter judgment in favor of Koppers on the duty to defend and indemnify.

# STATEMENT REGARDING ORAL ARGUMENT

Counsel requests oral argument. Counsel respectfully submits that the Court's disposition of this case would be aided by oral presentation to this Court.

Submitted by

Laura F. Locklair
Boyle Leonard & Anderson, P.A.
9111 W. College Pointe Dr. Ste 100
Ft. Myers, FL 33919-3379
854.800.0804
llocklair@insurance-counsel.com

Robert H. Friedman
Friedman, P.A.
340 Royal Poinciana Way
Suite 317-202
Palm Beach FL 33480
561-800-2110
rob@friedmanpa.com

Counsel for Appellant Koppers Performance Chemicals, Inc.

37

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. _____    Caption: _____

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT
Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

---

**Type-Volume Limit for Briefs if Produced Using a Computer:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 13,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 15,300 words or 1,500 lines. A Reply or Amicus Brief may not exceed 6,500 words or 650 lines. Amicus Brief in support of an Opening/Response Brief may not exceed 7,650 words. Amicus Brief filed during consideration of petition for rehearing may not exceed 2,600 words. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include headings, footnotes, and quotes in the count. Line count is used only with monospaced type. See Fed. R. App. P. 28.1(e), 29(a)(5), 32(a)(7)(B) & 32(f).

---

**Type-Volume Limit for Other Documents if Produced Using a Computer:** Petition for permission to appeal and a motion or response thereto may not exceed 5,200 words. Reply to a motion may not exceed 2,600 words. Petition for writ of mandamus or prohibition or other extraordinary writ may not exceed 7,800 words. Petition for rehearing or rehearing en banc may not exceed 3,900 words. Fed. R. App. P. 5(c)(1), 21(d), 27(d)(2), 35(b)(2) & 40(b)(1).

---

**Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch). Fed. R. App. P. 32(a)(5), 32(a)(6).

---

This brief or other document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

[ ]    this brief or other document contains _____ [*state number of*] words

[ ]    this brief uses monospaced type and contains _____ [*state number of*] lines

This brief or other document complies with the typeface and type style requirements because:

[ ]    this brief or other document has been prepared in a proportionally spaced typeface using
_____ [*identify word processing program*] in
_____ [*identify font size and type style*]; **or**

[ ]    this brief or other document has been prepared in a monospaced typeface using
_____ [*identify word processing program*] in
_____ [*identify font size and type style*].

(s)_____

Party Name_____

Dated:_____