**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 23-1732

KOPPERS PERFORMANCE CHEMICALS, INC., f/k/a Osmose Wood Preserving
Co. of America, Inc., f/k/a Osmose Wood Preserving, Inc., f/k/a Osmose, Inc.,

Plaintiff – Appellant,

v.

ARGONAUT-MIDWEST INSURANCE COMPANY, d/b/a Argo Group,

Defendant – Appellee,

and

THE TRAVELERS INDEMNITY COMPANY,

Defendant.

Appeal from the United States District Court for the District of South Carolina, at
Charleston.  Richard Mark Gergel, District Judge.  (2:20–cv–02017–RMG)

Argued:  March 28, 2024                                Decided:  June 27, 2024

Before DIAZ, Chief Judge, QUATTLEBAUM, Circuit Judge and TRAXLER, Senior
Circuit Judge.

Reversed and remanded for further proceedings by published opinion. Judge Quattlebaum
wrote the opinion, in which Chief Judge Diaz and Senior Judge Traxler joined.

**ARGUED:** Laura Figueroa Locklair, BOYLE LEONARD & ANDERSON, P.A., Fort Myers, Florida, for Appellant. Brandon Robert Gottschall, SWEENY, WINGATE & BARROW, P.A., Columbia, South Carolina, for Appellee. **ON BRIEF:** Mark S. Barrow, SWEENY, WINGATE & BARROW, P.A., Columbia, South Carolina, for Appellee.

QUATTLEBAUM, Circuit Judge:

This case requires us to answer two questions under Hawaii law. First, do four insurance policies unambiguously limit commercial general liability coverage to the named insured's Hawaii operations? And second, can an insurance company disclaim a duty to defend when the third-party complaint tendered to it does not allege a covered claim, but other information tendered at its request potentially does? Under our interpretation of Hawaii law, the answer to both questions is no. Therefore, we vacate the district court's grant of summary judgment to the insurance company and remand for further proceedings consistent with this opinion.

## I.

### A.

Koppers Performance Chemicals, Inc., is a New York-based corporation that manufactures wood preservation chemicals. In 2014, Phillip H. Riley and his wife sued Koppers and other lumber industry entities in South Carolina state court claiming that Riley "worked in the fence-making industry using treated lumber manufactured and/or provided by" Koppers and the other entities. J.A. 222. Riley alleged that he developed cancer from exposure to chromated copper arsenate ("CCA"), a chemical with which the lumber was treated. In a deposition in the state court action, Riley clarified his belief that he was exposed to CCA "from '78 to '92 . . . from the time of being born until [his family] stopped working with [CCA] in 1992." J.A. 58. As it turns out, Riley grew up on a property where

his family ran a fence-building business in South Carolina, the same business for which he eventually worked.

Almost two years later, Koppers tendered a copy of the original complaint to Argonaut-Midwest Insurance Company, asserting that Argonaut had a duty to defend it in the Riley lawsuit under four commercial general liability policies. Issued decades earlier in Hawaii, the policies included the following named insured designation:

> OSMOSE WOOD PRESERVING CO. OF AMERICA, INC., AND GRIFFIN FORREST INDUSTRIES, INC., DBA HAWAII WOOD PRESERVING CO., AND DBA OSMOSE PACIFIC, INC., A SUBSIDIARY 2819 PUKOLOA STREET, HONOLULU, HAWAII 96819

J.A. 271, 285; *see also* J.A. 303.[1] Koppers asserted it was entitled to coverage as the successor-in-interest of Osmose Wood Preserving Co. of America, Inc.

The policy periods spanned from 1979 to 1982, corresponding to the time Riley was an infant until he was almost four years old. Perhaps it was for that reason that Argonaut requested information from Koppers about the timing of the exposure alleged by Riley. In response, Koppers provided Argonaut with Riley's deposition testimony in which Riley claimed exposure since birth.

Argonaut ultimately sent Koppers a letter disclaiming any duty to defend or indemnify. Argonaut reasoned that the policies limited Osmose Wood Preserving Company of America, Inc.'s status as a named insured to activities "where it and/or Griffin

---

[1] The record includes copies of the first, second and fourth policies. While the parties never located a copy of the third policy, there is no dispute that it lists the same named insured designation as the first two policies. This is supported by a certificate of insurance issued in connection with the third policy. And while the fourth policy lists a different Honolulu address in the named insured designation, it lists the same insured entities.

Forrest Industries, Inc. was 'doing business as' Hawaii Wood Preserving Co. and/or Osmose Pacific, Inc." J.A. 340. Explaining that the original complaint did not bring claims against any entity insured under the policies, Argonaut stated that the policies did not provide coverage to Koppers in the Riley lawsuit. Argonaut also reserved its right to assert that other policy provisions precluded coverage.

Riley subsequently filed an amended complaint against Koppers, this time alleging exposure to CCA-treated wood stored on the property on which he grew up and used in his later fence-building work. Koppers did not, however, tender the amended complaint to Argonaut as required for coverage under the policies. Koppers later settled Riley's case.

## B.

A few years later, Koppers sued Argonaut in the District of South Carolina, seeking a declaratory judgment that Argonaut owed duties to defend and indemnify it in the Riley lawsuit. It also brought two claims for damages—one for breach of the duty to defend and the other for breach of the duty to indemnify. Argonaut answered with four counterclaims seeking declarations that Koppers was not an insured under the policies or, alternatively, that the policies were unenforceable because they were formed as a result of misrepresentation, mutual mistake or unilateral mistake.

Both parties eventually moved for summary judgment. Koppers moved for partial summary judgment on its declaratory judgment claim as to Argonaut's duty to defend in the state court action and on Argonaut's counterclaims. And Argonaut moved for summary judgment on all of Koppers' claims and on its declaratory judgment counterclaims. Interpreting the policies under Hawaii law, the district court granted Argonaut's motion

and denied Koppers' motion. Focusing on the duty to defend, the district court found that the policies are "limited to ensuring entities and operations located in Hawaii." J.A. 444. The district court reasoned that the policies' general liability hazards section and accompanying certificates of insurance only list Hawaii locations. The district court explained that this conclusion was bolstered by the use of Hawaiian "doing business as"—or DBA—entities in the named insured designation. J.A. 445. Because the original complaint did not name either DBA entity or describe Koppers' Hawaii operations, the district court concluded that it did not allege a potential for coverage under the policies, such that Argonaut had no duty to defend.

Even if the policies' coverage extended beyond Koppers' Hawaii operations, though, the district court determined that the original complaint did not give rise to a potential for coverage because it did "not allege bodily injury during the applicable policy periods (from around 1979 to around 1982—Riley's infancy)." J.A. 449. The district court explained that, under Hawaii law, "the duty to defend is limited to situations where the underlying *pleadings* have *alleged* a claim for relief which falls within the terms for coverage of the insurance contract, . . . and the Original Complaint contains no such allegations." J.A. 449 (emphasis added) (internal quotes omitted). The district court stated that Riley's deposition testimony that alleged exposure since birth did not change its conclusion because Hawaii follows the "complaint allegation rule," precluding

6

consideration of extrinsic evidence beyond the four corners of the complaint in the assessment of an insurer's duty to defend. J.A. 449.[2]

The district court, therefore, concluded that Argonaut had no duty to defend or indemnify Koppers with respect to the Riley lawsuit. It granted Argonaut's motion for summary judgment and denied Koppers' motion for partial summary judgment. The district court declined to rule on Argonaut's counterclaims. Koppers now appeals.[3]

II.

We review de novo a district court's disposition of cross-motions for summary judgment. *Bostic v. Schaefer*, 760 F.3d 352, 370 (4th Cir. 2014). "When cross-motions for summary judgment are before a court, the court examines each motion separately, employing the familiar standard under Rule 56 of the Federal Rules of Civil Procedure."

---

[2] In this case, in addition to bringing claims against Argonaut, Koppers also sought declaratory judgments that other insurance companies—Travelers Indemnity Company and four entities doing business as "Chubb"—had duties to defend it in the Riley lawsuit based on policies in existence during Riley's infancy. Koppers stipulated to the dismissal with prejudice of its claims against the Chubb entities. But Koppers sought summary judgment on its declaratory judgment claim against Travelers. As it had done with Argonaut, Koppers had provided Travelers with both Riley's original complaint and his deposition excerpt, but Travelers disclaimed any duty to defend. The district court concluded that, under South Carolina law governing the Travelers policy, the deposition excerpt triggered Travelers' duty to defend. South Carolina law dictates that an insurer's duty to defend is controlled by the allegations in a complaint, as well as "'facts outside of the complaint that are known by the insurer.'" *City of Hartsville v. S.C. Mut. Ins. & Risk Fin. Fund*, 677 S.E.2d 574, 578 (S.C. 2009) (quoting *USAA Prop. & Cas. Ins. Co. v. Clegg*, 661 S.E.2d 791, 798 (S.C. 2008)). The district court reasoned that Travelers knew that Riley alleged exposure since birth in his deposition. This, the district court held, was sufficient to trigger its duty to defend under South Carolina law.

[3] We have jurisdiction under 28 U.S.C. § 1291.

*Desmond v. PNGI Charles Town Gaming, L.L.C.*, 630 F.3d 351, 354 (4th Cir. 2011).

Summary judgment should be granted when "there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Additionally, "[a] federal court acting under its diversity jurisdiction should respond

conservatively when asked to discern governing principles of state law." *Rhodes v. E.I. du

Pont de Nemours & Co.*, 636 F.3d 88, 96 (4th Cir. 2011). A federal court "should not

interpret state law in a manner that may appear desirable to the federal court, but has not

been approved by the state whose law is at issue." *Id.* The federal court must, instead,

"predict" how the state's highest court would rule on the state law issue in question. *Knibbs

v. Momphard*, 30 F.4th 200, 213 (4th Cir. 2022).

### III.

Koppers raises three arguments in asserting that the district court erred in granting

summary judgment to Argonaut. First, Koppers argues that the district court erroneously

determined that the policies limit coverage to its Hawaii operations. Second, Koppers

insists that the district court wrongly concluded that the original complaint and deposition

excerpt tendered to Argonaut did not trigger a duty to defend. Third, and finally, Koppers

argues that the district court likewise erred in concluding that Argonaut has no duty to

indemnify. Finding the first two arguments dispositive, we consider them in turn.

### A.

The extent of the policies' coverage is a question of contract interpretation governed

8

by Hawaii law.[4] Under Hawaii law, "the terms of the policy should be interpreted according to their plain, ordinary, and accepted sense in common speech unless it appears from the policy that a different meaning is intended." *Estate of Doe v. Paul Revere Ins. Grp.*, 948 P.2d 1103, 1112 (Haw. 1992) (internal quotes omitted). Accordingly, "[e]very insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, restricted, or modified by any rider, endorsement or application attached to and made part of the policy." Haw. Rev. Stat. § 431.10-237; *AIG Haw. Ins. Co. v. Estate of Caraang*, 851 P.2d 321, 326 (Haw. 1993). Insurance policies are construed liberally in favor of the insured, and all ambiguities are resolved against the insurer. *Tri-S Corp. v. W. World Ins. Co.*, 135 P.3d 82, 89 (Haw. 2006). However, "the parties' disagreement as to the meaning of a contract or its terms does not render clear language ambiguous." *State Farm Fire & Cas. Co. v. Pac. Rent-All, Inc.*, 978 P.2d 753, 762 (Haw. 1999). Terms are ambiguous only if they are "reasonably susceptible to more than one meaning." *Hawaiian Ass'n of Seventh-Day Adventists v. Wong*, 305 P.3d 452, 461 (Haw. 2013).

Here, with respect to commercial general liability coverage, the policies provide that

---

[4] For good reason, the parties do not dispute that the policies are governed by Hawaii law. This appeal invokes our diversity jurisdiction. Federal courts sitting in diversity apply the forum state's choice-of-law rules to determine the controlling substantive law. *See Am. Online, Inc. v. St. Paul Mercury Ins. Co.*, 347 F.3d 89, 92 (4th Cir. 2003). Under South Carolina's choice-of-law principles, a contract's "validity and interpretation is governed by the law of the place where it [was] made, the *lex loci contractus*," unless the contract expressly provides otherwise. *Livingston v. Atl. Coast Line R. Co.*, 180 S.E. 343, 345 (S.C. 1935). Here, the policies were issued and delivered in Hawaii and do not contain any choice-of-law provision. They are, therefore, governed by Hawaii law.

Argonaut "will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of . . . bodily injury . . . to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury . . . ." J.A. 273, 287, 305. The policies define "bodily injury" as "bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom." J.A. 330. And an "occurrence" means "an accident, including continuous or repeated exposure to conditions, which results in bodily injury . . . neither expected nor intended from the standpoint of the insured." J.A. 331.

Argonaut does not dispute that cancer caused by exposure to Koppers' wood-treating chemicals during the policy periods qualifies as a "bodily injury" caused by an "occurrence." Rather, Argonaut argues that the policies' coverage is limited to Koppers' Hawaii operations, such that they only cover claims alleging a connection to those operations. Argonaut maintains that the district court correctly reached this conclusion since the policies only mention Hawaii locations and list Hawaiian DBA entities in the named insured designation.

Concerning the Hawaii locations, it is true that Hawaiian addresses are listed at the top of the "Description of Hazards" sections in the policies' general liability hazards schedule, J.A. 272, 297, 304, one of which is reproduced below.



J.A. 297. Under those addresses, the "Description of Hazards" lists headings such as "Premises-Operations," "Owners or Contractors Protective," "Products-Completed Operations," "Broad Form Property Damage" and "Increased Limits Charge." J.A. 272, 297; *see also* J.A. 304.[5] One might infer that the listed hazards are limited to the Hawaiian

---

[5] The fourth policy's "Description of Hazards" section slightly differs from those found in the first and second policies in the record. For example, it lists a different Hawaii

addresses above them, although the policies do not specifically say that. But regardless, the policies provide that "this insurance applies only to bodily injury . . . which occurs within the policy territory." J.A. 274. The policies define "policy territory," in relevant part, as "(1) the United States of America, its territories or possessions, or Canada." J.A. 331. Nowhere do the policies expressly limit commercial general liability coverage to bodily injury *arising out of* the Hawaii locations listed in the policies.[6]

And while the policies' named insured designation includes DBA entities, the policies fail to clarify the relationships between each of the entities listed in that designation. Recall that the named insured designation reads:

> OSMOSE WOOD PRESERVING CO. OF AMERICA, INC., AND GRIFFIN FORREST INDUSTRIES, INC., DBA HAWAII WOOD PRESERVING CO., AND DBA OSMOSE PACIFIC, INC., A SUBSIDIARY 2819 PUKOLOA STREET, HONOLULU, HAWAII 96819.

J.A. 271, 285; *see also* J.A. 303. As Koppers argues, the order in which these entities are listed could suggest that the DBA entities only relate to Griffin Forrest Industries., Inc. Of course, the fact that one of the DBA entities' names includes "Osmose" could reasonably cast doubt on that interpretation. Still, that DBA entity does not immediately follow

---

address and does not include "Increased Limits Charge." Those differences do not affect our analysis.

[6] To the extent that Argonaut emphasizes that certificates of insurance accompanying the policies also list only Hawaii locations, we cannot consider them. Each certificate explicitly provides that it "is issued as a matter of information only" and "does not amend, extend or alter the coverage afforded by the policies." J.A. 300–02. As stated above, we may only construe a policy "as amplified, extended, restricted, or modified by any rider, endorsement or application attached to and made a part of the policy." Haw. Rev. Stat. § 431:10-237.

Osmose Wood Preserving Co. of America, Inc. If Osmose Wood Preserving Co. of America, Inc., and Griffin Forrest Industries, Inc., were doing business *together* as the listed DBA entities, the policies do not make that known. Most significantly, though, nothing in the policies explicitly limits coverage to the DBA entities as opposed to Osmose Wood Preserving Co. of America, Inc., and Griffin Forrest Industries, Inc.

Ultimately, the scope of the policies' coverage is not clear. One reasonable interpretation limits coverage to the Hawaii operations of Koppers—as the successor-in-interest of Osmose Wood Preserving Co. of America, Inc.—based on the listing of Hawaii locations and DBA entities. Another reasonable interpretation, based on the policies' express language, finds coverage applies to Koppers generally.

Because the policies' scope of coverage is subject to multiple reasonable interpretations as to its geographic limits and the covered entities, it is ambiguous. *See Hawaiian Ass'n of Seventh-Day Adventists*, 305 P.3d at 461. Under Hawaii law, we must resolve that ambiguity in Koppers' favor as the insured. *See Tri-S Corp.*, 135 P.3d at 89. Accordingly, we find that the policies do not limit commercial general liability coverage to Koppers' Hawaii operations.

B.

Having determined that the policies' coverage is not limited to Koppers' Hawaii operations, we turn to Koppers' assertion that the district court erroneously concluded that the original complaint and deposition excerpt tendered to Argonaut did not trigger a duty to defend. An insurer wishing to disclaim a duty to defend bears a heavy burden under Hawaii law, as any doubt as to its existence is resolved in favor of the insured. *Nautilus*

*Ins. Co. v. Lexington Ins. Co.*, 321 P.3d 634, 644 (Haw. 2014). The duty primarily rests on the *possibility* of coverage. *Id.*

To determine whether a possibility of coverage exists, Hawaii utilizes the "complaint allegation rule." *Pancakes of Haw., Inc. v. Pomare Props. Corp.*, 944 P.2d 83, 88 (Haw. Ct. App. 1997). Under this rule, "[t]he duty to defend is limited to situations where the pleadings have alleged claims for relief [that] fall within the terms for coverage of the insurance contract." *Hawaiian Holiday Macadamia Nut Co. v. Indus. Indemn. Co.*, 872 P.2d 230, 233 (Haw. 1994) (internal quotes omitted). To obtain a summary judgment declaration that it has no duty to defend, an insurer must prove that there is no genuine issue of material fact as to whether a possibility exists that its insured would incur liability for a claim covered by the policy. *Dairy Road Partners v. Island Ins. Co.*, 992 P.2d 93, 107 (Haw. 2000).

So, our duty to defend analysis requires consideration of the pleadings. The relevant complaint for our purposes is the original complaint in the Riley lawsuit, as that is the only pleading Koppers tendered to Argonaut. We agree with the district court's determination that the original complaint, standing alone, does not raise a possibility of Koppers' liability for a claim covered by the policies. That is because the original complaint does not allege any bodily injury occurring during the policy periods. *See Hawaiian Holiday*, 872 P.2d at 233 ("Where the pleadings fail to allege any basis for recovery within the coverage clause, the insurer has no obligation to defend." (internal quotes omitted)).

While the policies were in effect during Riley's infancy, the original complaint alleges only occupational exposure. Though Koppers argues that the allegations that Riley

"was exposed" to *and* "worked" with its chemicals, J.A. 44, refer to both childhood exposure and occupational exposure, the original complaint reveals otherwise. For example, the complaint alleges that Riley worked in the fence-making industry using lumber treated with chemicals provided by Koppers. It alleges that Koppers did not warn him of the risk of harm associated with exposure to the chemicals. The complaint even alleges that Riley and his wife were married "at all times relevant to [the] lawsuit." J.A. 219. The only allegation concerning Riley's childhood is that Riley grew up in Charleston, South Carolina.

Fairly read, the original complaint alleges only occupational exposure occurring beyond the policy periods. As such, it does not allow for any possibility of Koppers' liability in the Riley lawsuit. *See Dairy Road*, 992 P.2d at 110 n.9 (explaining that "where the language of the complaint affirmatively and unambiguously *exclude*[*s*] the possibility of coverage," an insurer is not required "to investigate further to determine whether there was a possibility of coverage in any event" (emphasis in original)).

However, in assessing whether it had a duty to defend Koppers, Argonaut requested information concerning the dates of Riley's alleged exposure. In response, Koppers provided Argonaut with Riley's deposition testimony alleging exposure since birth. Koppers contends that this testimony either sufficiently alleged infant exposure to trigger a duty to defend on its own or, at a minimum, obligated Argonaut to investigate whether a possibility of coverage existed. And if Argonaut had investigated, Koppers insists that it would have learned that there was a possibility of coverage because Riley grew up on a property where his family built fences with treated lumber.

Evaluating this argument requires some unpacking of Hawaiian case law. The Hawaii Supreme Court first held that insurers have, at times, a duty to investigate the possibility of coverage in *Standard Oil Company of California v. Hawaiian Insurance & Guaranty Company*, 654 P.2d 1345, 1349 (Haw. 1982). There, the insureds had an automotive liability policy covering a refueler truck that serviced planes. *Id.* at 1346. After a fatal plane crash, the heirs and executors of the passengers and pilot sued the insureds, alleging that the insureds failed to detect and remove obstructions to the flow of fuel into the plane's engines. *Id.* at 1346, 1348–49.

The Hawaii Supreme Court found that these allegations should have alerted the insurer to the possibility that the refueler truck was involved in the plane crash. *Id.* at 1349. The court explained that the insureds "had the right to expect that their insurance company would make a determined effort to ascertain not only from the pleadings but also from the insurer's own independent investigation whether the insured[s] were entitled to defense representation under the policy." *Id.* The court then quoted the Kansas Supreme Court's statement that:

> [A]n insurer must look beyond the effect of the pleadings and must consider any facts brought to its attention or any facts which it could reasonably discover in determining whether it has a duty to defend. . . . [T]he duty to defend rests primarily on the possibility that coverage exists. This possibility may be remote, but[,] if it exists[,] the company owes the insured a defense. The possibility of coverage must be determined by a good-faith analysis of all information known to the insured or all information reasonably ascertainable by inquiry and investigation.

*Id.* (quoting *Spruill Motors, Inc. v. Universal Underwriters Ins. Co.*, 512 P.2d 403, 407 (Kan. 1973)).

Following *Standard Oil*, Hawaii courts built upon this duty to investigate. For a time, the Hawaii Supreme Court seemingly allowed insurers to look beyond the pleadings to disclaim a duty to defend that otherwise arose from a complaint's allegations. For example, in *Hawaiian Insurance and Guarantee Company v. Brooks*, 686 P.2d 23, 24–25 (Haw. 1984), a woman brought a negligence suit against a driver for failing to intervene when his passenger sexually assaulted her. The Hawaii Supreme Court found that the driver's insurer had no duty to defend the driver in the suit because the driver's affidavit revealed that his conduct was intentional—not negligent. *Id.* at 28. And since the policy expressly disclaimed coverage for intentional conduct, the affidavit made clear that there was no possibility of coverage under the policy. *Id.*

Similarly, in *Hawaiian Insurance and Guaranty Company v. Blanco*, 804 P.2d 876, 878 (Haw. 1990), a man sued a homeowner whom he alleged intentionally or negligently fired a rifle at him. As in *Brooks*, the policy excluded claims based on intentional conduct. *Id.* The Hawaii Supreme Court determined that the homeowner's insurer had no duty to defend the homeowner because a police report indicated that he intentionally—not negligently—fired the rifle at the man. *Id.* at 879–80.

Later, in *Bayudan v. Tradewind Insurance Company*, 957 P.2d 1061 (Haw. Ct. App. 1998), the Intermediate Court of Appeals of Hawaii considered *Brooks* and *Blanco* when assessing an insurer's duty to investigate. In *Bayudan*, a woman sued a homeowner who sexually assaulted her in his home, alleging claims of both intentional and negligent conduct. *Id.* at 1062–63. The homeowner's insurer disclaimed its duty to defend, reasoning

17

that the homeowner's alleged conduct was intentional—not negligent—and, therefore, not covered by his home insurance policy. *Id.* at 1063.

The Intermediate Court of Appeals agreed, finding that even though the complaint brought claims of negligent conduct, it exclusively alleged intentional facts. *Id.* at 1068–70. While the homeowner argued that *Brooks* and *Blanco* required the insurer to conduct a good faith investigation into the facts before denying him a defense, the Intermediate Court of Appeals disagreed. *Id.* at 1070. It reasoned that "the insurers in *Brooks* and *Blanco* were *permitted* to use facts obtained in their investigations to deny a defense to their insureds based on the [policies'] intentional acts exclusion, even though the pleadings had alleged claims that would not ostensibly fall within such an exclusion." *Id.* (emphasis in original). But, the court continued, "Neither case *required* an insurer to undertake an investigation of the insured's intent before denying a defense based on this exclusion." *Id.* (emphasis in original).

Then, after discussing *Standard Oil* and other decisions, the Intermediate Court of Appeals held that an insurer must investigate beyond the pleadings in three situations: (1) when the complaint's allegations should have alerted the insurer to the possibility of coverage, "as in *Standard Oil*"; (2) when the complaint's allegations differ from facts known to or readily ascertainable by the insurer; or (3) when the complaint's allegations are ambiguous. *Id.* at 1062; *see also id.* at 1070–71. Finding that none of those circumstances existed with respect to the woman's complaint against the homeowner in the case before it, the Intermediate Court of Appeals concluded that the insurer had no duty to investigate the possibility of coverage beyond the pleadings. *See id.* at 1070–72.

18

But in *Dairy Road Partners v. Island Insurance Company*, 992 P.2d 93 (Haw. 2000), the Hawaii Supreme Court clarified, if not walked back, *Standard Oil* and the duty to investigate. It explained that "*Standard Oil* stands for the proposition that, where the insured tenders his or her defense in a lawsuit in which the complaint does not clearly and unambiguously assert a covered claim, the insurer, as a precondition to refusing the tender on the ground that there is no possibility of coverage, must nevertheless conduct a reasonable investigation to ensure the facts of the case do not obligate it to defend the insured." *Id.* at 109–10.

As for *Brooks* and *Blanco*, *Dairy Road* explained that those cases stood for the proposition that "when the facts alleged in the underlying complaint unambiguously exclude the possibility of coverage, conclusory assertions contained in the complaint regarding the legal significance of those facts . . . are insufficient to trigger the insurer's duty to defend." *Id.* at 112. This was consistent with *Dairy Road*'s recognition that when "the underlying complaints are unambiguous as to the potential for coverage pursuant to the . . . policy, . . . . there [is] no need for [the insurer] to look further than the allegations of the complaint[ ] in the underlying lawsuit to *trigger* its duty to defend." *Id.* at 110 (emphasis in original). That is, if a complaint unambiguously alleges a potential for coverage, an insurer need not go beyond the pleadings to further evaluate its duty to defend—that duty has already been triggered. *Dairy Road* only "overrule[d] *Brooks* and *Blanco* to the limited extent that they imply that an insurer may rely upon extrinsic facts that may be subject to dispute in the underlying lawsuit as a basis for disclaiming its duty

to defend where the complaint in the underlying lawsuit alleges facts within coverage." *Id.* at 117.

With this understanding of Hawaii law, we confront facts that differ from those considered in *Standard Oil* or *Dairy Road*. The complaint in *Standard Oil* ambiguously alleged a potential for coverage, such that the insurer had a duty to investigate beyond the complaint to determine its duty to defend. And the complaint in *Dairy Road* unambiguously alleged a potential for coverage, such that the insurer could not look beyond the pleadings to disclaim its duty to defend.

The case before us is different. Here, the original complaint unambiguously alleges no potential for coverage because it fails to allege a bodily injury occurring during the policy periods. Yet, prior to disclaiming its duty to defend, Argonaut specifically requested more information from Koppers about the dates of Riley's alleged exposure. Koppers responded with Riley's deposition testimony that included Riley's conflicting allegation that he was alleging exposure since birth, a timeframe which overlapped with the policy periods.

The question, therefore, is whether in assessing its duty to defend, Argonaut could ignore extrinsic information that it requested after receiving a complaint that unambiguously failed to raise a possibility of coverage. Hawaii law does not clearly answer this question. So, we must predict how the Hawaii Supreme Court would resolve it. *See Knibbs*, 30 F.4th at 213. Under our interpretation of Hawaii law, we believe that the Hawaii Supreme Court would hold that Argonaut was required to consider the extrinsic evidence it specifically requested from Koppers when assessing its duty to defend.

The Hawaii Supreme Court has made clear that an insurer wishing to disclaim a duty to defend bears a heavy burden. *Nautilus Ins. Co.*, 321 P.3d at 644. And under Hawaii law, any doubt as to the duty to defend is resolved in favor of the insured. *Id. Dairy Road* reaffirms this. *See* 992 P.2d at 107. Tempering *Standard Oil* and subsequent interpretations of it, *Dairy Road* precludes an insurer from looking beyond the pleadings to *disclaim* its duty to defend when the complaint alleges a possibility of coverage. *Id.* at 117. But nothing in *Dairy Road* suggests that an insurer can ignore information outside the pleadings that it requested. *See id.* at 110 & n.9, 117. And that is precisely what Argonaut did.

Riley's deposition testimony indicated that Riley was alleging exposure since birth. That was enough to trigger a duty to defend. Accordingly, Argonaut has failed to show that there is no genuine issue of material fact as to whether a possibility existed that Koppers would have incurred liability for a claim covered by the policies in the Riley lawsuit.[7] *See Dairy Road*, 992 P.2d at 107. The district court's order granting Argonaut's summary judgment motion and denying Koppers' partial summary judgment motion on the issue of Argonaut's duty to defend is therefore vacated.

## C.

Having determined that Argonaut was not entitled to summary judgment on the

---

[7] Even if the policies only covered Koppers' Hawaii operations, Argonaut would not be entitled to summary judgment on the duty to defend. The original complaint is silent on the geographic origin of the chemicals to which Riley was allegedly exposed. So, the chemicals could have come from the Hawaiian operations. That possibility, even if remote, is enough to trigger the duty to defend. *See Dairy Road*, 992 P.2d at 107. Thus, Argonaut would still be unable to show that there is no genuine issue of material fact as to whether a possibility existed that Koppers would have been liable for a covered claim. *See id.*

issue of its duty to defend, what remains is the district court's grant of summary judgment to Argonaut on the issue of its duty to indemnify and on Koppers' claims for breaches of the duties to defend and indemnify, as well as its denial of Kopper's partial motion for summary judgment on Argonaut's duty to indemnify. Because each of these determinations stemmed from the district court's erroneous conclusion that Argonaut was entitled to summary judgment on the duty to defend, each must be vacated. We do not reach whether Koppers is entitled to summary judgment on any of its claims, as Argonaut has unresolved counterclaims. Because Argonaut alleges that its duties to defend and indemnify hinge on its counterclaims, we remand this matter for further proceedings.

IV.

For these reasons, we vacate the district court's order granting summary judgment to Argonaut and denying Koppers' motion for partial summary judgment. We remand this matter for further proceedings consistent with this opinion.

*REVERSED AND REMANDED*